IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 10 2006
U.S. COURT OF FEDERAL CLAIMS

GOLD BANK, A KANSAS BANK,
11301 Nall Avenue, Leawood, Kansas

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No: 06-29 C

## COMPLAINT

Plaintiff Gold Bank requests a judgment against the United States awarding damages due to the Farm Service Agency's illegal and unconstitutional actions that have caused plaintiff damage in excess of $10,000.00. Specifically, the FSA has failed to establish a maximum interest "rate" as required by Congress and has violated Gold Bank's Fifth Amendment due process rights and contract rights by requiring compliance or certification of compliance with unconstitutionally vague regulations governing certain farm lending programs as a condition of receiving statutory interest subsidy payments.

## JURISDICTION, STATUTES AND REGULATIONS

1. This Court has subject matter jurisdiction over this action because is a claim for money damages in excess of $10,000.00, under contracts between plaintiff and the FSA, the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921 *et seq.*, regulations promulgated by Defendants in 7 C.F.R. Part 762, and the U. S. Constitution. Therefore, jurisdiction is proper under 28 U.S.C. § 1491(a).

## ACTION BY U.S. DISTRICT COURT

2. Plaintiff previously asserted its claims in the U.S. District Court for the District of Kansas. On December 23, 2005, that Court dismissed plaintiff's claims on the ground that the U.S. Court of Federal Claims had exclusive jurisdiction to hear them under the Tucker Act.

## THE PARTIES

3. Gold Bank, a Kansas bank, is a commercial bank with branches in Kansas, Missouri, Oklahoma and Florida. At all times relevant to this action, Gold Bank made agricultural loans to eligible farm borrowers under the Farm Service Agency's Guaranteed Lending Program and Interest Assistance Program.

4. The United States, acting by and through the United States Department of Agriculture ("USDA") and the Farm Service Agency ("FSA"), is charged with establishing, administering, and enforcing rules and regulations governing the Guaranteed Lending Program and the Interest Assistance Program pursuant to 7 U.S.C. § 1989.

## BACKGROUND

### The FSA's Guaranteed Lending and Interest Assistance Programs

5. Under the Guaranteed Lending Program ("GLP"), the FSA guarantees up to ninety-five percent (95%) of agricultural loans made by participating lenders such as Gold Bank to eligible farm borrowers. *See* 7 C.F.R. § 762.105 *et seq.*

6. Congress directed that the interest rates on guaranteed real estate and operating loans would be at a rate agreed by the lender and borrower, "but not in excess

of a rate as may be determined by the Secretary [of Agriculture]." 7 U.S.C. §§ 1927(5) and 1946(b).

7. The USDA and FSA failed to establish the maximum "rate" mandated by Congress in the statutes and instead promulgated regulations that provide only a generic description of the maximum interest that may be charged on guaranteed loans. These regulations require that the interest rates charged to borrowers participating in the GLP cannot exceed rates charged to a lender's "average agricultural loan customer." *See* 7 C.F.R. § 762.124(a) (the "Interest Rate Regulation"). The term "average agricultural loan customer" is not defined in the FSA regulations.

8. Under the statutory Interest Rate Reduction (Interest Assistance) Program ("IAP"), farm borrowers who receive FSA-guaranteed loans may also qualify for a four percent (4%) interest subsidy that the FSA is directed to provide for the benefit of farmers who would have a negative annual cash flow without the subsidy. *See* 7 U.S.C. § 1999; 7 C.F.R. § 762.150.

9. Under program regulations, eligible lenders such as Gold Bank must enter into an Interest Assistance Agreement with the FSA for each loan carrying interest assistance. 7 C.F.R. § 762.150. Gold Bank has entered into an Interest Assistance Agreement with the FSA that covers each of the requested payments that the FSA has denied and for which recovery is sought in this lawsuit. Each of these contracts is in the form attached hereto as Exhibit A.

10. Once an Interest Assistance Agreement is in place, the lender must annually submit a Form FSA-1980-24, Request for Interest Assistance Payment, ("IAP Request") before the FSA will pay the interest subsidy for that year. 7 C.F.R.

§ 762.150. This IAP Request requires the lender to certify to the FSA that the claim "is accurate and consistent with the terms of FSA regulations and the Interest Assistance Agreement," possibly including the Interest Rate Regulation. *See, e.g.*, Complaint Exhibit B (Forms FSA-1980-24, Request for Interest Assistance Payment (borrower information redacted)). If the FSA approves an IAP Request, it pays the interest subsidy directly to the lender, which in turn credits the amount of the subsidy to the borrower's account. *See* 7 C.F.R. § 762.150(b)(7).

11. The certifications required by Defendant on Form FSA-1980-24, Request for Interest Assistance Payment, are arbitrary and unlawful, and may not be interposed as a condition of receiving interest assistance payments for qualified borrowers.

**The *Qui Tam* Lawsuit**

12. On October 24, 2002, one of Gold Bank's former farm borrowers filed a *qui tam* lawsuit, *United States ex rel. Roger L. Ediger v. Gold Banc Corporation, Inc., Gold Bank Oklahoma and Gold Bank Kansas*, Case No. CIV-02-1493, under seal in the United States District Court for the Western District of Oklahoma (the "*Qui Tam* Lawsuit").

13. The relator alleged that Gold Bank and its predecessors violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, by submitting false claims and certifications to the FSA due to charging excessive fees and interest rates on agricultural loans participating in the GLP and IAP.

14. According to the relator, Gold Bank committed a violation of the False Claims Act each time it submitted any form (including Form FSA-1980-24) certifying compliance with FSA regulations, including the Interest Rate Regulation, and made a

demand for payment upon the FSA under either the GLP or IAP. For each alleged violation, the relator sought treble damages and statutory penalties of $11,000, as well as costs and expenses including attorneys fees.

15. The central issue in the *Qui Tam* Lawsuit was whether Gold Bank complied with the Interest Rate Regulation requiring it to charge interest rates not to exceed those charged to its "average agricultural loan customer."

16. On November 19, 2004, the United District Court for the Western District of Oklahoma approved a settlement of the *Qui Tam* Lawsuit in which Gold Bank paid $16.0 million dollars to the United States government and ordered the claims dismissed with prejudice. Gold Bank did not admit liability to the U.S. government or the relator and denied all allegations of wrongdoing.

**The Vague Interest Rate Regulation and Definition Violate Due Process**

17. The Interest Rate Regulation and the definition of "average farm customers" provided in 7 C.F.R. § 762.102 violate the due process of law required by the Fifth Amendment of the United States Constitution because they are so vague that people of common intelligence must necessarily guess at their meaning and differ as to their application.

18. According to one subsection of the Interest Rate Regulation,

> Neither the interest rate on the guaranteed portion nor the unguaranteed portion [of a loan] may exceed the rate the lender charges its <u>average agricultural loan customer</u>. At the request of the Agency, the lender must provide evidence of the rate charged the <u>average agricultural loan customer</u>. This evidence may consist of average yield data, or documented administrative differential rate schedule formulas used by the lender.

7 C.F.R. § 762.124(a)(3) (emphasis added).

19. Yet another subsection provides that variable interest rates charged to guaranteed borrowers "may change according to the normal practices of the lender for its average farm customers." 7 C.F.R. § 762.124(a)(2) (emphasis added).

20. The term "average agricultural loan customer" is not defined in 7 C.F.R. Part 762.

21. However, the term "average farm customers" is purportedly defined in 7 C.F.R. § 762.102 (the "Definition") as:

> Those conventional farm borrowers who are required to pledge their crops, livestock, and other chattel and real estate security for the loan. This does not include those high-risk farmers with limited security and management ability who are generally charged a higher interest rate by conventional agricultural lenders. Also, this does not include those low-risk farm customers who obtain financing on a secured or unsecured basis, who have as collateral such items as savings accounts, time deposits, certificates of deposit, stocks and bonds, and life insurance, which they are able to pledge for the loan.

22. No further guidance on identifying the "average agricultural loan customer" or "average farm customers" is provided in 7 C.F.R. Part 762 or in the legislative history of its enabling statutes. In addition, the FSA's Guaranteed Farm Loan Making and Servicing Handbook ("Handbook") provides no additional guidance regarding the Definition or in otherwise identifying the "average agricultural loan customer" or "average farm customers."

23. Neither the Definition, the Interest Rate Regulation, nor the Handbook give constitutionally adequate guidance regarding numerous terms and provisions essential to provide Gold Bank and other lenders notice of what is expected for compliance.

24. Because the Interest Rate Regulation and the Definition are so vague, unclear and subjective, the U. S. government, the FSA, the Courts, prosecutors, and

civil litigants could disagree as to whether Gold Bank has complied with the Interest Rate Regulation.

**The Current Controversy Between Gold Bank and the FSA**

25. Facing the ongoing prospect of punitive False Claims Act and other civil liability due to the impossibility of applying the Definition or the Interest Rate Regulation, Gold Bank began attaching addenda limiting its certifications to the accuracy of lender-provided information on its IAP Requests. *See, e.g.*, Complaint Exhibit B (borrower information redacted).

26. The FSA has denied and continues to deny Gold Bank's IAP Requests with the accompanying addenda, stating that it will not accept any addendum or change to its form. *See, e.g.*, Complaint Exhibit C (Letter from Carol J. Haygood, Farm Loan Manager, Farm Loan Programs Team, Enid Service Center, Garfield County FSA Office, to Mike Bonnett, Senior Vice President, Gold Bank, (February 16, 2005) (borrower information redacted)).

27. Gold Bank has appealed each denial of its IAP Requests to the USDA's National Appeals Division on the grounds that the FSA should not use the unconstitutionally vague definition and Interest Rate Regulation as a basis to deny interest assistance to which Gold Bank is entitled. *See, e.g.*, Complaint Exhibit D (Letter from Mike Bonnett, Senior Vice President, Gold Bank, to National Appeals Division, Western Region (March 14, 2005) (borrower information redacted)).

28. The National Appeals Division has denied Gold Bank's appeals on the grounds that 7 C.F.R. § 11.3(b) prohibits the use of its procedures "to seek review of statutes or U.S.D.A. regulations issued under Federal Law." *See, e.g.*, Complaint

Exhibit E (Letter from Patricia A. Leslie, Assistant Director, National Appeals Division, to Mike Bonnett, Senior Vice President, Gold Bank (April 13, 2005) (borrower information redacted)).

29. As of the time this complaint was prepared, defendant had denied ninety-eight of plaintiff's IAP requests for amounts totaling $401,674.35. Plaintiff anticipates that defendant will continue to deny additional IAP requests on identical grounds, and will submit a revised total amount at trial.

**COUNT I**

30. Gold Bank incorporates by reference paragraphs 1 through 29 of this Complaint.

31. Defendant has expressed no reason for denying Gold Bank's interest assistance payments other than Gold Bank's refusal to certify compliance with the unconstitutionally vague Interest Rate Regulation and Definition.

32. Defendant has refused to pay over $400,000 in interest assistance payments to Gold Bank based on the unconstitutionally vague Interest Rate Regulation and Definition. Defendant's refusal to pay these sums is unlawful and violates its Interest Assistance Agreements with plaintiff.

WHEREFORE, Gold Bank respectfully requests that the Court enter judgment in favor of Gold Bank and against the United States in an amount to be proved at trial but in excess of $400,000, plus interest, costs and such other and further relief as the Court deems just.

Respectfully submitted,

Michael Tucci (Bar No. 430470)
Stinson Morrison Hecker LLP
1150 18th Street, Suite 800
Washington, DC 20036
Tel: (202) 785-9100
Fax: (202) 785-9163
E-mail: mtucci@stinsonmoheck.com

And

R. Dennis Wright
Sean W. Colligan
Stinson Morrison Hecker LLP
1201 Walnut Street
Kansas City, Missouri 64106-2150
Tel: (816) 691-2600
Fax: (816) 474-4208
E-mail: dwright@stinsonmoheck.com
E-mail: scolligan@stinsonmoheck.com

ATTORNEYS FOR PLAINTIFF
GOLD BANK

Dated: January 10, 2006

This form is available electronically.

FSA-1980-64
(06-04-02)

Form Approved - OMB No. 0560-0155

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

*See Page 2 for Privacy Act Statements.*

# INTEREST ASSISTANCE AGREEMENT

## PART A - BACKGROUND INFORMATION

| | | |
|---|---|---|
| 1. Borrower's Name and Address *(Including ZIP Code)* | 2. Borrower's FSA Case Number | |
| 3. Lending Institution's Name and Address *(Including ZIP Code)* | 4. Lender's Tax Identification Number | |
| 5. Type of Loan: ☐ OL ☐ OL-LOC | | |
| 6. Loan Closing Date | 7. Principal Amount of Loan or Line of Credit Ceiling $ | 8. Loan Number |

## PART B - CONDITIONS OF INTEREST ASSISTANCE

**1. Effective Dates**

This agreement is effective beginning *(a)* ________ *DATE (MM-DD-YYYY)* and expires on *(b)* ________ *DATE (MM-DD-YYYY)*.

In consideration of the lender's reduction of the interest charged the borrower's account, the United States of America, acting through the Farm Service Agency of the United States Department of Agriculture (FSA) pursuant to the Consolidated Farm and Rural Development Act (7 U.S.C. Part 1921 et seq.) agrees that in accordance with and subject to the conditions and requirements of this agreement it will reimburse the lender for a maximum of 4 percentage points per annum of interest reduction. The full amount of interest assistance payments made by FSA to the lender will be passed on to the borrower.

For the initial period of this agreement beginning *(c)* ________ *DATE (MM-DD-YYYY)* and ending *(d)* ________ *DATE (MM-DD-YYYY)*.

**2. Rate of Interest Assistance**

FSA agrees to reimburse the lender for ________ percentage points per annum of the average daily principal balance. The rate of Interest Assistance in future years will be adjusted annually in accordance with the conditions of this agreement.

**3. Interest Rates**

The lender may charge a fixed or variable interest rate which is specified in this agreement during the term of the interest assistance agreement. The type of rate must be the same as the type of rate in the underlying note.

The interest rate that the lender will charge will be clearly indicated in the request for interest assistance. If a variable rate is charged, it will comply with 7 C.F.R. Part 762.150.

**4. Interest Assistance Payments**

FSA payments made in connection with interest assistance will be calculated using the average daily principal balance.

**5. Annual Interest Assistance Claims and Payment**

The initial interest assistance claim will be prepared by the lender using Form FSA-1980-24, "Request for Interest Assistance Payment for Guaranteed Loans," within 12 months after the ending date of the initial period specified in this agreement. Subsequent claims will be filed by the lender on or after the same day each year thereafter but no later than 12 months after the anniversary of the ending date of the initial interest assistance claim. Failure to submit claims within 12 months will result in no interest assistance payments for that period. Upon full payment of the note or line of credit agreement the lender will immediately prepare Form FSA-1980-24 and send it to the FSA servicing office.

**6. Request for Continuation of Interest Assistance**

For all loans which extend beyond the ending date of the initial review period, the lender will analyze the borrower's need for continued interest assistance in accordance with the methodology defined in 7 C.F.R. Part 762. The lender will then submit the request for continuation of interest assistance by completing the appropriate section of Form FSA-1980-24. The request for payment of the claim from a previous period will not be processed until the analysis of the borrower's need and request for continuation has been made by the lender.

**7. When Interest Assistance Payments Cease**

For cases when FSA purchases a portion of the loan, interest assistance payments on that portion will cease. Interest assistance payments will cease upon termination of the loan guarantee, upon reaching the expiration date set forth in this agreement or upon cancellation by the Government. Interest assistance payments shall cease upon the assumption or transfer of the loan if the transferee was not liable for the debt at the time the assistance was granted. The lender shall complete Form FSA-1980-24 to request payment for the interest assistance through the date of the transfer or assumption of the guaranteed loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.*

## PART B - CONTINUED CONDITIONS OF INTEREST ASSISTANCE

**8. Cash Flow**

The lender must document that a feasible plan is not possible without reducing the interest rate on the borrower's loan and with the debt restructured over the term of the repayment. A borrower's new guaranteed loan is eligible for interest assistance if the applicant needs interest assistance to achieve a feasible plan. If significant changes in the borrower's cash flow budget are anticipated after the initial 12 months, then the typical cash flow budget must demonstrate that the borrower will still have a feasible plan, following the anticipated changes, with or without interest assistance. Feasible plan and cash flow budget are defined in 7 CFR Part 762 and must be calculated in accordance with that part.

**9. Cancellation of Interest**

Lender certifies that the amount of interest reduction on the borrower's account will be canceled as it becomes due.

**10. Regulatory Changes**

This agreement is subject to the present regulations of the FSA and its future regulations not inconsistent with the provisions of this agreement.

**11. Cancellation**

The interest assistance agreement is incontestable except for fraud or misrepresentation of which the lender has actual knowledge at the time this agreement is executed or for which the lender participates in or condones.

**12. Excessive Interest Assistance**

The Government may amend or cancel this agreement and collect from the lender any amount of payment granted as a result of incomplete or inaccurate information, computation errors, or other circumstances which resulted in interest assistance payment that the lender was not entitled to receive.

**13. Access to Lender's Files**

Upon request by FSA, the lender will permit representatives of FSA (or other agencies of the U.S. Department of Agriculture) to inspect and make copies of any of the records of the lender pertaining to FSA guaranteed loans. Such inspection and copying may be made during regular office hours of the lender, or any other time the lender and FSA find convenient.

To the extent permitted by law and the supervisory agency, the lender agrees to allow FSA access to audit findings by the lender's supervising agency when examining interest assistance claims.

## PART C - CERTIFICATIONS

| 1A. Name of Borrower | 1B. Signature of Borrower | 1C. Date |
|---|---|---|
| 2A. Name and Title of Lender's Representative | 2B. Signature of Lender's Representative | 2C. Date |
| 3A. Name and Title of Authorized FSA Official | 3B. Signature of Authorized FSA Official | 3C. Date |

***NOTE:*** *The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): The Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act (7 USC Part 1921* **et seq.**), *and the regulations promulgated thereunder, to solicit the information requested on this agreement. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Department of the Treasury, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act (FOIA), to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including your Social Security Number or Federal Tax Identification Number, may result in a delay in processing this agreement or its rejection.*

*Under the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0155. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions searching existing data sources gathering and maintaining the data needed, and completing and reviewing the collection of information.* ***RETURN THIS COMPLETED FORM TO YOUR LOCAL FSA OFFICE.***

Recd 2-18-05

USDA UNITED STATES DEPARTMENT OF AGRICULTURE

Farm Loan Programs Team
Enid Service Center
Garfield County FSA Office
1216 W Willow Rd Ste C
Enid OK 73703-2532
Telephone: (580) 237-4321
Fax: (580) 237-9536

February 16, 2005

Gold Bank
Mike Bonnett, Senior Vice President
PO Box 5068
Enid, OK 73702

RE:
Interest Assistance Claims - # and #

Dear Mr. Bonnett:

Your 02-16-2003 through 02-16-2004 Request for Interest Assistance Payment (attached) is being denied at this time. Farm Service Agency cannot accept the request with your change to the Lender's Certification in item 25 of the form. This FSA form is approved by the Office of Management and Budget for use nationally by all FSA guaranteed lenders. FSA will accept no changes to this form. Feel free to resubmit your request without the attached Addendum within any remaining time period for such requests in accordance with 7 C.F.R. § 762.150(d) and your Interest Assistance Agreement.

If you believe our decision is wrong, you have the following options:

***Option # 1 - Reconsideration***

You may request us to reconsider this determination by filing a written request no later than 30 calendar days after the date of this notice in accordance with the FSA appeal procedures found at 7 CFR Part 780. If you request reconsideration, you have the right to an informal hearing which you or your representative may attend either personally or by telephone. To request reconsideration, write to: Carol J Haygood, Farm Loan Manager, 1216 W Willow Rd Ste C, Enid OK 73703, and explain why you believe this determination is erroneous.

**Option # 2 – Alternative Dispute Resolution (ADR)**

Mediation through the Oklahoma Agriculture Mediation Program is available as part of FSA's informal appeal process. Mediation may enable us to narrow the issues and resolve the matter by mutual agreement. The Oklahoma State Agriculture Mediation Program may require you to pay all or part of the cost of mediation. If you request mediation, the running of the time period in which you may file an appeal stops. When mediation closes, the clock restarts and you will have the balance of the days remaining in that period to file an appeal. To request mediation, you must submit your written request no later than 30 calendar days after the date of this notice. To request mediation, write to the Oklahoma Agriculture Mediation Program at 2302 W. 7th Street, Stillwater, OK 74074.

In the alternative, you may seek another acceptable form of ADR.

EXHIBIT

USDA is an Equal Opportunity Provider and Employer

USDA UNITED STATES DEPARTMENT OF AGRICULTURE

Farm Loan Programs Team
Enid Service Center
Garfield County FSA Office
1216 W Willow Rd Ste C
Enid OK 73703-2532
Telephone: (580) 237-4321
Fax: (580) 237-9536

Option # 3 – Appeal to the Department of Agriculture National Appeals Division (NAD)

You may appeal this determination to NAD by filing a written request no later than 30 calendar days after the date you receive this notice in accordance with the NAD appeal procedures found at 7 CFR Part 11. If you appeal to NAD, you have the right to a hearing, which you and/or your representative may attend.

Once a hearing with NAD begins, you must write to NAD at the following address, explain why you believe this determination is erroneous, and provide a copy to FSA. You must personally sign your written appeal to NAD and include a copy of this letter.

National Appeals Division, Western Region
755 Parfet Street
Lakewood, CO 80215-5506

If you do not timely exercise one of the preceding options, this shall be the final administrative determination with respect to this matter in accordance with the regulations at 7 CFR Part 780 and 7 CFR Part 11.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

If you believe that you have been discriminated against for any of the reasons stated above, you may file a complaint with the Director, Office of Civil Rights, United States Department of Agriculture, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, DC 20250-9410.

Sincerely,

Janice R. Black

for CAROL J HAYGOOD
FARM LOAN MANAGER

cc: Farm Loan Programs, OK State Office
Losco Hunter, District Director
Billy D Murray, Farm Loan Specialist

Gold Bank
MORE THAN MONEY®

P.O. Box 5068
Enid, OK 73702
Telephone: 580.234.1263
Fax: 580.234.1912

March 14, 2005

National Appeals Division, Western Region
755 Parfet Street
Lakewood, CO 80215-5506

RE:

Interest Assist Claim &

Subject to the following explanation, please consider this letter to be an appeal from the adverse decision of the Farm Service Agency as stated in the attached letter to Gold Bank dated February 16, 2005. Because Gold Bank believes the underlying FSA regulations are vague, as explained below, we do not believe that the National Appeals Division ("NAD") may review this matter. Please review 7 C.F.R. § 11.3(b). If NAD disagrees, Gold Bank requests that the evidentiary hearing be held before a hearing officer in person and that the hearing be held at Gold Bank's office at 11301 Nall Avenue, Leawood, Kansas 66211.

Gold Bank believes the FSA's decision to refuse to accept the Request for Interest Assistance Payment with the addendum is wrong for the following reasons:

1. The FSA should not use economic coercion to force Gold Bank to certify than an interest assistance payment request is consistent with unlawfully vague FSA regulations.

2. The FSA's recommendation that Gold Bank resubmit the Request without the addendum would, if followed, subject Gold Bank to a claim that Gold Bank intended to certify that the claim is consistent with the terms of unspecified "FSA regulations," including, without limitation, those found at 7 C.F.R. § 762.124(a)(3) and 7 C.F.R. § 762.102 (definition of "Average farm customers").

3. The regulation found at 7 C.F.R. § 762.124(a)(3) is so vague, and subject to so many varying interpretations, that it fails to give adequate notice of what is required for compliance. In addition, some of the provisions of the definition of "average farm customers" are likewise vague. Accordingly, Gold Bank should not be forced by the FSA to submit a Request for payment without the addendum, which properly clarifies the lender's certification.

4. The FSA regulations fail to establish a rate, determined by the Secretary, as required by the enabling statutes.

EXHIBIT

Gold Bank
MORE THAN MONEY®

P.O. Box 5068
Enid, OK 73702
Telephone: 580.234.1263
Fax: 580.234.1312

We would appreciate learning from you as to whether NAD has jurisdiction to hear Gold Bank's appeal and the basis for the jurisdiction. Please contact either of Gold Bank's legal representatives concerning this letter:

R. Dennis Wright / Sean Colligan
Stinson Morrison Hecker
1201 Walnut Street
Kansas City, MO 64106
816-842-8600

Very truly yours,

GOLD BANK

By [signature]
Michael Bonnett, Senior Vice President

cc: Carol Haygood, FLM, 1216 W. Willow Rd., Ste C, Enid, OK 73703

This form is available electronically.

Position 2

FSA-1980-24
(05-29-02)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Form Approved - OMB No. 0560-0155

# REQUEST FOR INTEREST ASSISTANCE PAYMENT

Transaction 4031

*(See Page 2 for Privacy Act and Public Burden Statements.)*

**INSTRUCTIONS: PLEASE ADD DECIMAL POINTS WHEN SUPPLYING DOLLAR AMOUNTS AND INTEREST RATES BELOW.**

1. BORROWER'S CASE NUMBER:
   - 1A. State Cd. 42
   - 1B. County Cd. 24
   - 1C. Borrower's Identification Number

2. BORROWER'S NAME *(Enter Last, First, & Middle Initial)*

3. LENDER'S NAME
GOLD BANK

4. LENDER'S TAX IDENTIFICATION NUMBER
480357520

5. BRANCH NUMBER
002

6. FSA LOAN NUMBER

7. ORIGINAL LOAN AMOUNT
$ 230,000.00

8. BEGINNING CLAIM PERIOD *(MM-DD-YYYY)*
02-16-2003

9. END CLAIM PERIOD *(MM-DD-YYYY)*
02-16-2004

10. PRINCIPAL BALANCE AT END OF CLAIM PERIOD
$ 52,605.15

11. AVERAGE DAILY PRINCIPAL BALANCE DURING CLAIM PERIOD
$ 48,391.30

12. INTEREST PAYABLE
$ 1,935.65

13. FINAL PAYMENT *(Insert appropriate code in box below)*
[2] 1 = YES 2 = NO

14. PAYMENT ISSUED CODE (Completed by FSA) *(Insert appropriate code in box below)*
[ ] 1 = SYSTEM GENERATED CHECK
2 = MANUAL PAYMENT
3 = NO PAYMENT NEEDED

15. DATE MANUAL PAYMENT ISSUED *(Completed by FSA Finance Office) (Month, Day, Year)*

16. LENDER'S ELECTRONIC FUND TRANSFER (EFT) ROUTING NUMBER
103102795

17. LENDER DEPOSIT ACCOUNT NUMBER FOR EFT
110609

18. TYPE OF ACCOUNT *(Check one below)*
[✔] CHECKING [ ] SAVINGS

**REQUEST FOR CONTINUATION OR ADJUSTMENT OF INTEREST ASSISTANCE**

TERM OF NEXT INTEREST ASSISTANCE PERIOD:

19. BEGINNING DATE *(MM-DD-YYYY)*
02-16-2004

20. ENDING DATE *(MM-DD-YYYY)*
02-16-2005

21. PERCENT OF ASSISTANCE REQUESTED NEXT PERIOD *(Enter 4% or Zero)*
0 %

22. TERMINATE INTEREST ASSISTANCE AGREEMENT *(Insert appropriate code in box below)*
[2] 1 = YES 2 = NO
IF "YES," ALL ASSISTANCE FUNDS FOR THE LIFE OF THE ASSISTANCE ARE DEOBLIGATED (NO FUTURE PAYMENTS)

23. EFFECTIVE DATE OF INTEREST ASSISTANCE TERMINATION *(Month, Day, Year) (Complete if "1" is entered in Item 22)*

24. REASON FOR TERMINATION CODE *(Leave blank if no entry was made in Item 23)*
[ ] 01 = Borrower is no longer eligible for interest assistance.
02 = Loan is paid in full.

25. *LENDER'S CERTIFICATION: I hereby certify that the above claim is accurate and consistent with the terms of FSA regulations and the Interest Assistance Agreement. The Request for Continuation was determined based on the borrower's need in accordance with FSA regulations and the Interest Assistance Agreement.*

25A. AUTHORIZED LENDER'S SIGNATURE
[signature]

25B. TITLE
SR VICE PRESIDENT

25C. DATE *(MM-DD-YYYY)*
3/8/05

**FSA USE ONLY**

26. Percent of Interest Assistance Approved for next period: 0 %

*I have reviewed the above Request for Payment of Interest Assistance and Request for Continuation of Interest Assistance. The requested payment or approved level of continued interest assistance is consistent with the supporting documentation, FSA regulations, and the Interest Agreement Interest Rate.*

27A. AUTHORIZED FSA OFFICIAL SIGNATURE

27B. TITLE
FARM LOAN MANAGER

27C. DATE *(MM-DD-YYYY)*

28. COUNTY FSA OFFICE NAME AND ADDRESS *(ZIP Code)*
CAROL BAYGOOD
FARM SERVICE AGENCY
1216 W WILLOW, SUITE C
ENID, OK 73703

TELEPHONE NUMBER *(Including Area Code)* (580) 237-4207

[ ] FSA SERVICING OFFICE [✔] LENDER

Addendum to FSA 1980-24 Form

February 8, 2005

The Lender's Certification in section 25 of this FSA 1980-24 form relates solely to the accuracy of the lender-provided information set out in sections 1-24 on this form.

USDA

UNITED STATES DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY
NATIONAL APPEALS DIVISION

April 13, 2005

Mike Bonnett
Senior Vice President
Gold Bank
Post Office Box 5068
Enid, Oklahoma 73702

RE: 51 Case Numbers Listed on Enclosure

Dear Mr. Bonnett:

This letter responds to your appeal requests to the National Appeals Division (NAD) about the Farm Service Agency's (FSA) denial to allow a change to the Lender's Certification form for interest assistance payments. In your letter of appeal, you state the following: 1) the regulations are vague, 2) the regulations are subject to many varying interpretations, and 3) the regulations fail to give adequate notice of compliance. You further state the FSA regulations fail to establish a rate as required by the enabling statutes.

I deny your requests because you are challenging: the regulations at Title 7 of the Code of Federal Regulations (7 C. F. R.), Part 762, *Guaranteed Farm Loans*, and an approved Office of Management and Budget (OMB) form used to administer the guaranteed farm loan program. Under 7 C. F. R. Part 11 that governs NAD appeals, § 11.3(b) states the NAD procedures may not be used to seek review of statutes or U.S. Department of Agriculture regulations issued under Federal Law.

Please visit our website at www.nad.usda.gov to learn more about NAD and the appeals process.

Sincerely,

Patricia A. Leslie

Patricia A. Leslie
Assistant Director

Enclosure: 2-page List with NAD case numbers



EXHIBIT

cc: AGENCY DECISION MAKER/REPRESENTATIVE:
Kingfisher FSA Office
Chad Rudd
1600 S. 13th St.
Kingfisher, OK 73750

GOLD BANK LEGAL REPRESENTATIVE:
R. Dennis Wright
1201 Walnut Street
Kansas City, MO 64106

WRO
Chron File

| Gold Bank Customer | NAD Case Number |
|---|---|
| 1. | 2005W000408 |
| 2. | 2005W000409 |
| 3. | 2005W000410 |
| 4. | 2005W000411 |
| 5. | 2005W000413 |
| 6. | 2005W000414 |
| 7. | 2005W000415 |
| 8. | 2005W000416 |
| 9. | 2005W000417 |
| 10. | 2005W000418 |
| 11. | 2005W000419 |
| 12. | 2005W000420 |
| 13. | 2005W000421 |
| 14. | 2005W000422 |
| 15. | 2005W000423 |
| 16. | 2005W000424 |
| 17. | 2005W000425 |
| 18. | 2005W000426 |
| 19. | 2005W000427 |
| 20. | 2005W000428 |
| 21. | 2005W000429 |
| 22. | 2005W000430 |
| 23. | 2005W000431 |
| 24. | 2005W000432 |
| 25. | 2005W000433 |
| 26. | 2005W000434 |
| 27. | 2005W000435 |
| 28. | 2005W000436 |
| 29. | 2005W000437 |
| 30. | 2005W000438 |
| 31. | 2005W000439 |
| 32. | 2005W000440 |
| 33. | 2005W000441 |
| 34. | 2005W000442 |
| 35. | 2005W000443 |
| 36. | 2005W000444 |
| 37. | 2005W000445 |
| 38. | 2005W000446 |
| 39. | 2005W000447 |
| 40. | 2005W000448 |

| Gold Bank Customer | NAD Case Number |
|---|---|
| 41. | 2005W000449 |
| 42. | 2005W000450 |
| 43. | 2005W000452 |
| 44. | 2005W000453 |
| 45. | 2005W000456 |
| 46. | 2005W000458 |
| 47. | 2005W000459 |
| 48. | 2005W000460 |
| 49. | 2005W000466 |
| 50. | 2005W000467 |
| 51. | 2005W000468 |